IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DALE PINCHOT | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| CHUBB INDEMNITY INS. CO. | : | No. 09-5082 |

MEMORANDUM

Ludwig, J.                                                                                                                      March 10, 2011

In this action involving a dispute as to the amount to be paid under a homeowner's insurance policy, plaintiff Dale Pinchot moves to vacate an arbitration award of $147,259.63 entered on September 8, 2010. The motion will be denied and the award, which was paid, confirmed. 42 Pa.C.S.A. §§ 7341, 7342(b). In addition, rulings on defendant's request in its brief for dismissal of the complaint and sanctions will be deferred. The parties will be directed to make further submissions on both subjects, by April 15, 2011. Defendant's dismissal request in its brief will be regarded as a Rule 12(b)(6) motion, which may be converted into a Rule 56 motion if matters outside the pleadings are considered. Fed. R. Civ. P. 12(b)(6), 12(d), 56.

The history of this case is as follows. In 2007, plaintiff Pinchot notified his homeowner's insurer Chubb Indemnity Insurance Co. that a toilet backup and overflow on October 15 had caused extensive damage on the first floor and in the basement. Chubb's representative inspected the property and met and corresponded with plaintiff's public adjuster James Wagner on numerous occasions during the next six months. No agreement was reached. When no further action was taken by plaintiff, Chubb paid him $115,989.07

1

and on April 28, 2008, notified him and Wagner that its claim file would be closed.

On May 21, 2008, Wagner, on plaintiff's behalf, made a demand for "an appraisal of the loss" and appointed himself to be plaintiff's appraiser as the initial member of the tripartite appraisal panel.[1] Chubb selected an appraiser, John McBrearty, and he and Wagner selected a third. By letter faxed to McBrearty and Chubb's representative on August 26, 2008, Wagner canceled the appraisers' inspection of the property scheduled for the following day, stating: "The insured is considering other settlement options at this time." On November 17, 2008, having advised plaintiff and Wagner it would do so, Chubb again closed its file.

On October 13, 2009, almost eleven months later, plaintiff filed a complaint in the Philadelphia Common Pleas Court, alleging that Chubb had not paid plaintiff's damages in full and had acted in bad faith. Chubb removed the action to this court and filed an answer averring that the appraisal proceeding should be re-instituted. By a consent order dated December 22, 2009, the parties stipulated that the "entire property damage claim as set forth in the Complaint . . . shall be determined by Appraisal as set forth in the policy." In early 2010, the two previously selected appraisers, Wagner and McBrearty, agreed on a third

---

[1] Homeowner's Policy Terms, Appraisals:

> If you or we fail to agree on the amount of loss, you or we may demand an appraisal of the loss. Each party will select an appraiser . . . . The two appraisers will select a third appraiser. . . . Written agreement signed by any two of the three appraisers shall set the amount of the loss.

Def. ex. 19 at 5, doc. no. 31-19.

appraiser, Michael McIntyre. To resolve a dispute as to the scope of the appraisal, the parties stipulated by a consent order dated March 17, 2010 that the appraisal would include all items set forth in the complaint and that the appraisers were authorized to determine which items were properly part of the claim.[2]

At the appraisal hearings held during late July through early September, 2010, plaintiff's appraiser, Wagner, submitted a total damage figure of $702,887.35, and defendant's appraiser, McBrearty, a figure of $90,254.01. On September 8, 2010, McIntyre and McBrearty agreed on a total of $147,259.63.

On October 7, 2010, plaintiff moved to vacate the award. The motion to vacate challenges the valuations in two of the nine categories of damage claimed: "general personal property" and "paintings."[3] Some of the items of personal property were no longer available for inspection by McIntyre and McBrearty, but they did examine photos. The number of paintings reported to have been damaged increased, according to McBrearty, from 154 in November 2007 to 311 in August 2008, without explanation. The motion to vacate the appraisal award asserts that 318 paintings were damaged. McBrearty also submitted reports from art appraisers retained for Chubb. Plaintiff, through Wagner, presented a damage claim

---

[2] March 17, 2010 consent order, in part:

Should two of the three members of the appraisal panel determine and agree that an item claimed was damaged by the loss event, said appraisal panel members shall value that damage. Should two of the three . . . determine and agree that an item claimed was not [so] damaged . . . , then said appraisal panel members may value the damage to that item as zero.

[3] Wagner's October 7, 2010 letter, Pl. mot., ex. B, doc. no. 23-2.

3

of $1,250 for each one of the paintings claimed without regard to the size or nature of the painting and without expert support.

The substantive law that applies to an appraisal procedure under the parties' insurance policy is governed by Pennsylvania's statute on common law arbitration, 42 Pa.C.S.A. § 7341, which states in part:

> The award of an arbitrator in a non-judicial arbitration . . . is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

The scope of review of an appraisal award is limited to whether a party was denied a hearing or "fraud, misconduct, corruption, or similar irregularity le[d] to an unjust, inequitable, or unconscionable award." Runewicz v. Keystone Ins. Co., 383 A.2d 189, 191-92 (Pa. 1978); Wingate Constr. Co. v. Schweizer Dipple, Inc., 213 A.2d 275, 277 (Pa. 1965) (award made in common law arbitration proceeding cannot be reviewed for errors of fact or law). Accord Andrew v. CUNA Brokerage Serv., Inc., 976 A.2d 496, 500 (Pa. Super. Ct. 2009); Boulevard Assoc. v. Seltzer P'ship, 664 A.2d 983, 987 (Pa. Super. Ct. 1995); Gwin Eng'rs, Inc. v. Cricket Club Estates Dev. Group, 555 A.2d 1328, 1329 (Pa. Super. Ct. 1989). The appellant bears the burden to establish by "clear, precise and convincing evidence" that there was fraud, misconduct, corruption or some other irregularity on the part of the appraisers that caused "an unjust, inequitable, or unconscionable finding." Nationwide Mut. Ins. Co. v. Barbera, 277 A.2d 821, 823 (Pa. 1971). Accord McKenna v. Sosso, 745 A.2d 1, 4 (Pa. Super. Ct. 1999), appeal denied, 759 A.2d 924 (Pa. 2000); Chervenak, Keane & Co., Inc. v.

Hotel Rittenhouse Assoc., Inc., 477 A.2d 482, 485 (Pa. Super. Ct. 1984). An "irregularity" refers to a procedural irregularity, not the result of the proceeding. Id.

Plaintiff's appraiser, acting as plaintiff's representative, was given a full and fair opportunity to be heard and present evidence in regard to the insured's claim. Each item of plaintiff's personal property and each painting submitted by his appraiser was considered. As stipulated to by the parties and confirmed by a consent order, the panel determined that each item submitted was or was not damaged as claimed. Also as stipulated to and confirmed by a consent order, the procedure followed was that if an item was found to have been damaged, the panel determined the amount of damage. Otherwise, if not damaged, the panel valued the damage at zero.

According to plaintiff, because defendant's appraiser and the third appraiser had no rational basis for evaluating items no longer in existence, they were required to accept the valuation of plaintiff's appraiser, who had personally examined them. However, there was evidence that it was generally accepted procedure in property insurance claims adjustment and appraising to use photos of items not available for inspection. Here, moreover, these items had been in plaintiff's custody and control, and appeared to have been discarded.

The record contains no evidence of actual intent on McIntyre's or McBrearty's part to arrive at an unjust, inequitable, or unconscionable award. Boulevard, 664 A.2d at 987 (review is limited to determining whether there was an actual intent to deceive or otherwise corrupt the process); Gwin, 555 A.2d at 1329 ("actual fraud" must be shown). Much of the motion to vacate is grounded on perceived collusion by defendant's art experts. Even

assuming, as plaintiff posits, that defendant's art experts shared information and joined together to develop a list of titles for the paintings, that would not support an inference of actual fraud, misconduct, or corruption warranting reversal of the award. See Parking Unlimited, Inc. v. Monsour Med. Found., 445 A.2d 758, 762-63 & n.15 (Pa. Super. Ct. 1982) (permission to take additional depositions properly denied where the supposed evidence of perjury and collusion did not satisfy the standard for fraud in setting aside a common law arbitration award). Plaintiff has not produced evidence of actual fraud or other misconduct to sustain his difficult burden to vacate the award.

Furthermore, that defendant's art experts issued contradictory reports would not show the appraisers were deceitful, collusive or partial in accepting one expert's conclusions (Samet) that certain paintings had not been damaged. The appraisers were authorized to accept or reject the experts' findings and opinions. Boulevard, 664 A.2d at 987 ("arbitrators are the final judges of both law and fact and the award is not subject to judicial review for mistakes of either"); W.V. Realty Inc. v. Maryland Ins. Group, 48 Pa. D. & C.4th 459, 466-67 (2000) (appraisers could decide which valuations submitted by the parties and their experts were more credible), aff'd sub nom. WMC Mortg. Corp. v. Laviola, 778 A.2d 1257 (Pa. Super. Ct.), appeal denied, 788 A.2d 378 (Pa. 2001).

In plaintiff's view, the award was unconscionable because the amounts awarded were too low and were insufficient. This criticism of an unfavorable result does not warrant reversal of the award. The parties freely negotiated and stipulated to the terms of the appraisal agreement, and there is no evidence the procedures that were followed favored one

party over the other. The appraisers awarded less than plaintiff claimed to be owed and more than defendant suggested it should pay, which is not at all unusual in these cases.[4]

BY THE COURT:

/s/ Edmund V. Ludwig
Edmund V. Ludwig, J

---

[4] The total damage figure submitted for plaintiff of $702,887.35 was more than six times the amount awarded. The total figure submitted for defendant of $90,254.01 was about 60% of the award.